UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,	Criminal No.  04-80370-15

      Plaintiff,	HON. JOHN CORBETT O'MEARA

v.

D-15   HOUDA MOHAMAD BERRO,

      Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, respectfully submits this sentencing memorandum to inform the Court of its position at sentencing.  Based on the stipulated sentencing guidelines range of 12-18 months and the factors listed in 18 U.S.C. § 3553(a), a sentence of 12-18 months is a reasonable sentence.

## I.  BACKGROUND

On August 9, 2006, Defendant Houda Mohamad Berro pleaded guilty, pursuant to a Rule 11 Plea Agreement, to Count 52 of the Second Superseding Indictment, Bank Fraud, in violation of 18 U.S.C. § 1344.  Under the provisions of the Rule 11 Plea Agreement, the parties stipulated that the correct calculation of the sentencing guidelines was 12-18 months, the same range that has been calculated by the Probation Department in the Pre-Sentence Investigation Report.   The Plea Agreement provides that the Court may impose a sentence outside of that range so long as the sentence does not exceed 18 months.  In addition to Count 52, Houda Berro was charged in Count 45, Conspiracy To Launder Money, and Count 52,

Bank Fraud, which are included in the guidelines calculation as relevant conduct.

## II. LEGAL FRAMEWORK

Although sentencing guidelines are no longer mandatory after *United States v. Booker*, 543 U.S. 220 (2005), a district court "nonetheless must consider the applicable guideline range together with the other statutory factors." *United States v. Morris,* 448 F.3d 929, 931 (6th Cir. 2006); 18 U.S.C. § 3553(a)(4) (listing sentencing guidelines as one of the factors courts should consider in imposing sentence).  A sentence properly calculated under the guidelines is presumptively reasonable, *United States v. Williams*, 436 F.3d 706, 707-08 (6th Cir. 2006), though a sentence outside the range is not presumptively unreasonable. *United States v. Jackson,* 466 F.3d 537, 539 (6th Cir. 2006).

Section 3553(a)(2) provides that a court shall impose a sentence "sufficient, but not greater than necessary, to comply" with the following purposes: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In fashioning such a sentence, the court shall consider, among the other factors set forth in Section 3553, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). An important factor to consider in a multi-defendant case such as this one is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct." 18 U.S.C. § 3553(a)(6).

Defendant has asked for a variance from the guidelines range to a sentence of probation. When a district court imposes a sentence outside the sentencing guideline range, the variance must be based on articulated reasons tied to the factors enumerated in 18 U.S.C. § 3553(a). *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006). The greater the divergence from the sentencing guidelines range, the more compelling the justification based on those factors must be. *Id.*

### III.  APPLICATION

Here, a sentence of 12-18 months is needed to satisfy the purposes of sentencing, particularly the purposes of reflecting the seriousness of the offense and need for deterrence. A sentence within this guidelines range is also necessary to avoid sentencing disparities between co-defendants in this case who are less culpable than Houda Berro.

Defendant seeks a variance from the guidelines range to a sentence of probation based on her limited role and her lack of criminal history. However, in calculating the sentencing guidelines, Defendant has already received a four-level reduction in her offense level for her role in the offense as a minimal participant. This four-level reduction is the maximum reduction permitted under the guidelines. Moreover, her guidelines calculation was based on only the conduct in which she was involved, that is, the two mortgage frauds and the laundering of funds, involving a fraud amount between $200,000 and $400,000. In addition, though Defendant has no criminal history, her conduct in the case spanned more than a year, and her lack of criminal history is reflected in her criminal history category of

3

I, which was used to determine her sentencing guidelines.

A sentence of probation would not provide adequate deterrence to Houda Berro, who does not yet understand that she has committed a crime. In her letter to the Court, attached to her sentencing memorandum, she complains of her arrest: "It was as if I was being treated like a criminal who committed a crime . . . ."

## A.  Nature and Circumstances of the Offense

Under 18 U.S.C. § 3553(a)(1), the Court should consider the nature and circumstances of the offense. As detailed below, Houda Berro participated in two mortgage frauds -- the original purchase of her residence on Orchard Street in Dearborn and the refinancing of the same property.[1] She also participated in the laundering of the proceeds from those transactions. Her guidelines calculations are based on the value of the two mortgages, totaling $232,800.

### 1.  First Mortgage Fraud

Houda Berro is or was the common-law wife of co-defendant Abdul Halim Berro (D-7), with whom she has two children. In March 2001, Houda Berro submitted a loan application to the ABN AMRO Mortgage Group for the purchase of a home on Orchard Street in Dearborn. The application falsely stated that she was employed as a manager at Ousso Enterprises, the gas station at which Abdul Halim Berro worked, and that she earned

---

[1] The refinancing is the basis for Count 52, to which defendant has pleaded guilty. The original mortgage is the basis for Count 51, which is included in the calculation of her sentencing guidelines as relevant conduct.

$3,338.00 weekly.  As a result, she received a loan for $108,000.  She and Abdul Halim Berro lived in the home beginning in April 2001.  Abdul Halim Berro then made mortgage payments with his credit cards, which he later busted out and claimed in bankruptcy, thereby obtaining the house largely by fraud.  His payments, which totaled approximately eight times his declared income for 2001, reduced the mortgage balance to $626 by April 2002.  In his bankruptcy petition, Abdul Halim Berro did not reveal his interest in the Orchard property, for which he largely paid.

Defendant correctly points out that ABN AMRO did not suffer any loss as a result of her fraud because the payments were made, but the payments were made with credit cards that were busted out and claimed in bankruptcy by Abdul Halim Berro.  She and Abdul Halim Berro simply robbed Peter (the credit card companies) to pay Paul (ABN AMRO).  Therefore, the fraud should not be ignored.

### 2.  Second Mortgage Fraud

In April 2002, Houda Berro and Abdul Halim Berro refinanced the property, extracting more than $120,000 in cash from the equity.  Again, Houda Berro submitted a loan application to ABN AMRO, falsely stating that she worked as a manager for Abdul Halim Berro's company, Ousso Enterprises, and that she made approximately $4,404 per month.  As a result, Global Title Insurance Agency issued checks to Houda Berro totaling $120,377.

### 3.  Money Laundering

Houda Berro deposited these two checks from the title company into her bank account on April 15, 2002.  On April 17, 2002, Houda Berro withdrew the money in the form of a

5

check for $95,000 made payable to Halime Berro, who is the mother of Abdul Halim Berro. This check was endorsed and deposited into the bank account of Halime Berro. On May 23, 2002, a $95,000 check from this account was written, payable to Abdul Halim Berro, who deposited the check into his bank account. Abdul Halim Berro then wire transferred $95,000 to a bank account in Lebanon.[2]

**B.  History and Characteristics of the Defendant**

Under 18 U.S.C. § 3553(a)(1), the Court should also consider the history and characteristics of the defendant. Consideration of those factors do not support a sentence of probation here.

**1.  Houda Berro's Marriage To Abdul Halim Berro's Brother**

Defendant's sentencing memorandum asserts that Houda Berro's crime "stands in stark contrast to all other aspects of her life in which she has consistently acted with the highest standards of personal integrity and decency." However, evidence indicates that she participated in a fraudulent marriage to Rami Berro, to enable him to obtain immigration benefits in the United States. Rami Berro is the brother of Abdul Halim Berro, the common-law husband of Houda Berro, with whom she has two children, including a child born during her marriage to Rami Berro. Houda Berro states that her relationship with Abdul Halim Berro began in 1999. Their children were born in 2001 and 2003.

Houda Berro obtained her own U.S. citizenship in May 2002. In June 2002, she

---

[2]  Abdul Halim Berro and Houda Berro were charged with this money laundering in Count 45 of the Second Superseding Indictment.

married Rami Berro. Four days later, she signed an application to adjust Rami Berro's status based on their marriage, seeking to obtain permanent residence status for him. *See* Exhibit A, Petition for Alien Relative. Rami Berro obtained his permanent residence status on October 25, 2002, based on his marriage to Houda Berro. *See* Exhibit B, Notice of Action. They filed for divorce in September 2004, and a divorce judgment was entered in August 2005. No children were born to their marriage. Houda Berro and Abdul Halim Berro, however, had their second child in 2003, while she was still married to Rami Berro. Administrative immigration charges have been filed against Rami Berro for marriage fraud based on his marriage to Houda Berro.

Houda Berro has told the Probation Department that her relationship with Abdul Halim Berro ended before her marriage to Rami Berro in 2002. However, Abdul Halim Berro was arrested at the Orchard home early on the morning of April 26, 2004, where only he and Houda Berro were present. Agents observed that Abdul Halim Berro's belongings were in the house. It appeared to the agents that Abdul Halim Berro shared a bedroom with Houda Berro, and that they were living there as husband and wife. In June and July 2006, government witnesses stated that they believed Houda Berro and Abdul Halim Berro to be husband and wife. Based on a preponderance of the evidence, it appears that Houda Berro participated in a fraudulent marriage for the purposes of defrauding the United States government, in contrast to her assertions of integrity.

### 2. Defendant's Bond Conditions

Defendant cites her bond conditions as evidence that she has already suffered enough

and therefore a sentence of probation is appropriate. The bond conditions, which included a tether and weekly reporting to Pre-Trial Services, were ordered by a magistrate judge and later upheld by this Court, which continued the tether but modified the reporting requirement to biweekly. The conditions were not intended to be punitive, but to prevent Defendant from fleeing based on facts from which it appeared that she posed a risk of flight. Those facts, with supporting documentation, were laid out in the Government's Response to Houda Berro's Motion To Exclude Evidence Of Alleged Flight filed on February 28, 2006 (Docket Entry No. 404) and Government's Response to Houda Berro's Motion To Alter Bond Release Conditions, filed on March 23, 2006 (Docket Entry No. 433).[3]

---

[3] In addition to evidence of Houda Berro's significant family ties in Lebanon and access to substantial funds that she had wired there, evidence indicated that Houda Berro left the country after she was aware that a warrant had been issued for her arrest. When FBI agents unsuccessfully attempted to find and arrest Houda Berro on the morning of April 25, 2005, they advised family members, including her father, of her arrest warrant. An attorney then representing Houda Berro contacted the FBI at 3:00 p.m. that day and stated that he would make efforts to arrange for her surrender. At 10:00 p.m. that evening, Houda Berro was on a flight out of Detroit Metropolitan Airport bound for Lebanon, where she remained until October 19, 2005. At a bond hearing on October 19, 2005, her attorney stated: "She knew about the charges from her family because the paperwork came to her house on April 25th or 26th, so she knew about the charges, true enough, but since I got involved in the case, we have been discussing her coming back without being arrested at the airport." Besides her family, Houda Berro had additional indication that her arrest was imminent. She booked this flight in April 2005, three days after a hearing involving Abdul Halim Berro, during which the government disclosed that a superseding indictment would be filed charging additional defendants. Undersigned counsel had explained to counsel for Abdul Halim Berro that charges against Houda Berro were likely. In addition, FBI agents had searched Houda Berro's home pursuant to a search warrant on March 8, 2005, in her presence. Based on these facts, it is reasonable to infer that Houda Berro was aware of charges against her when she boarded the flight on April 25, 2005. It is uncontested that she remained in Lebanon even after she became aware of the charges.

### 3. Forfeiture of Defendant's Home

Defendant notes that forfeiture of her home will be part of the sentence in this case. However, the forfeiture of the home does not merit a sentence of probation. The forfeiture of the Orchard property, which was obtained by fraud and largely paid for by fraud, achieves a goal apart from the goals of sentencing. Forfeiture of this property simply disgorges the fruits of defendant's crime.[4]

### 4. Defendant's Family Circumstances

In support of her request for probation, Defendant points to her support for and devotion to her two young children. Courts should still consider, though they are not bound by, guidelines advice on departures. *United States v. Forrest*, 402 F.3d 678, 689-90 (6th Cir. 2006). A departure for family responsibilities is discouraged under the guidelines, U.S.S.G. § 5H1.6, and "therefore is proper only in exceptional cases." *United States v. Reed,* 264 F.3d 640, 653-54 (6th Cir. 2001); *accord, United States v. Brewer,* 899 F.2d 503, 507 (6th Cir. 1990). Here, Defendant's situation as a mother of young children is not exceptional, and does not merit a variance.

### C.   Avoiding Disparity In The Sentences Between Persons Similarly Situated

While Houda Berro is accurately characterized as less culpable than Abdul Halim Berro, whose 33-41 month guidelines range reflects his more serious conduct, she has

---

[4] Unlike the Orchard property, other properties in this case were obtained by fraudulent statements in the mortgage applications, but were then paid for. Here, busted out credit cards were used to pay off the first fraudulent mortgage. The proceeds from the fraudulent refinancing were sent to Lebanon.

received a four-level reduction for her relative culpability in the two mortgage frauds, which form the basis for her guidelines calculation.  Houda Berro is more culpable than three of her co-defendants, Abdul Karim Berro (D-14), Lina Reda (D-16), and Almire Berro (D-17), the three adult children of defendants claiming bankruptcy who committed mortgage fraud to help their parents conceal their homes from the bankruptcy court.  The guidelines range for these defendants range from 8 to 16 months.[5]  Unlike those defendants, who each committed one mortgage fraud, Houda Berro committed two mortgage frauds, and then she participated in financial transactions to conceal the proceeds.  She also reaped the benefits of Abdul Halim Berro's bust out and bankruptcy fraud when he used his credit cards to pay off the mortgage.  A sentence of probation for Houda Berro would create unwarranted disparity among defendants.

---

[5] Abdul Karim Berro has been sentenced to 10 months' imprisonment, though his criminal history is greater than that of Houda Berro.

## IV. CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court impose a sentence of 12-18 months.

                                        STEPHEN J. MURPHY
                                        United States Attorney

                                        s/Cathleen M. Corken
                                        Assistant U.S. Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI  48226
                                        (313) 226-0206
                                        E-Mail: cathleen.corken@usdoj.gov

                                        s/Barbara L. McQuade
                                        Assistant U.S. Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI  48226
                                        (313) 226-9725
                                        E-Mail: barbara.mcquade@usdoj.gov
                                        Bar Code: P45423

Dated: December 8, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, December 8, 2006, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following :

        Salem F. Samaan
        sfsamaan@sbcglobal.net

        s/ BARBARA L. McQUADE
        Assistant U.S. Attorney
        211 W. Fort St., Suite 2001
        Detroit, MI 48226
        Telephone: (313) 226-9698
        E-Mail: barbara.mcquade@usdoj.gov
        Bar No.: P45423

Date: December 8, 2006