19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

v.

CRIMINAL ACTION
NO. 04-80370-15

HOUDA MOHAMAD BERRO
Defendant.
_______________________________/

SENTENCING HEARING
BEFORE THE HONORABLE JOHN CORBETT O'MEARA
United States District Judge
Ann Arbor U.S. Courthouse & Federal Building
200 East Liberty Street
Ann Arbor, Michigan
Tuesday, December 12, 2006

APPEARANCES:

BARBARA L. McQUADE
JULIE A. BECK
United States Department of Justice
United States Attorney's Office
211 West Fort Street-21st Floor
Detroit, Michigan 48226
(313)226-9100
Email: barbara.mcquade@usdoj.gov
julie.beck@usdoj.gov
On behalf of the Government.

SALEM F. SAMAAN
150 North Main Street
Plymouth, Michigan 48170
(734)459-4040
Email: sfsamaan@sbcglobal.net
On behalf of Defendant.

FILE COPY

- - - -

TO OBTAIN CERTIFIED TRANSCRIPT:
Andrea E. Wabeke, CSR, RMR, CRR
Official Court Reporter
734.741.2106

682



# I N D E X

| **Proceeding** | **Page** |
|---|---|
| Allocution by Mr. Samaan.................. | 5 |
| Allocution by the Defendant............... | 12 |
| Allocution by the Ms. McQuade............. | 13 |
| Sentence of the Court..................... | 13 |

# E X H I B I T S

| **Exhibit No.** | **Offered** | **Received** |
|---|---|---|

(None Offered)

Ann Arbor, Michigan

December 12, 2006

10:53 a.m.

\- - -

THE CLERK: The Court calls United States of America versus Houda Berro.

MS. McQUADE: Good morning, your Honor. Barbara McQuade on behalf of the United States.

MS. BECK: And Julie Beck on behalf the United States. Good morning.

MR. SAMAAN: Good morning, your Honor. For the record, Salem Samaan, appearing on behalf of Houda Mohamad Berro, who is approaching the podium.

THE COURT: Good morning, Mr. Samaan. And Miss Berro is standing next to you at the lectern. You said that. We're here, as the parties know, this morning at the time and place set for the sentencing of Miss Berro, who appeared before this Court on August 9th of year, and at that time tendered a plea of guilty to Count 52 of the second superceding indictment. There was a Rule 11 Plea Agreement. The guilty plea was accepted. The Rule 11 Plea Agreement was taken under advisement.

The Court asks you on this day in December, Miss Berro, if you still ask the Court to accept your

plea of guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is that your request as well, Mr. Samaan?

MR. SAMAAN: Yes, your Honor.

THE COURT: And Miss McQuade?

MS. McQUADE: Yes, your Honor.

THE COURT: The Court at this time does accept the Rule 11 Plea Agreement.

Any reason the Defendant should not be sentenced this morning known to you, Mr. Samaan?

MR. SAMAAN: No, your Honor.

THE COURT: Do you know of any, Miss McQuade?

MS. McQUADE: No, your Honor.

THE COURT: And Miss Berro, do you understand what I'm saying is do you know of any reason you shouldn't be sentenced today, do you?

THE DEFENDANT: No.

THE COURT: Are there any unresolved objections to the presentence investigation report from the point of view of the Defendant?

MR. SAMAAN: No, your Honor.

THE COURT: From the point of view of the Government?

MS. McQUADE: No, your Honor.

THE COURT: And Miss Berro, what Mr. Samaan has said as your counsel as your lawyer has said, is that the presentence investigation report, which you went over with him, right?

THE DEFENDANT: Yes, your Honor.

THE COURT: It doesn't have anything in it which is material, that's important and wrong and in error, and isn't missing anything that's material and important; do you agree with that?

THE DEFENDANT: Yes, your Honor.

THE COURT: That was a yes? All right. It's time for allocution. Mr. Samaan?

MR. SAMAAN: Yes, your Honor, if I may. Thank you. Your Honor, the facts that led to the charges filed against Miss Berro date back to when the initial indictment was first brought against the initial defendants. At that time, Miss Berro was not charged.

And at that time there was an offer made by the Government that if Mr. Abdul Halim Berro, who was just sentenced before you today, who is the father of her children, if he was to plead guilty and accept an offer of plea of guilty by the Government, that in fact no charges would be brought against Miss Berro.

A similar offer was made even after Houda Berro was charged, and that is if Mr. Berro would plead guilty, Halim Berro that is, that the Government would consider diversion on behalf of Miss Berro. And at that time, there was no acceptance of plea of guilty by Mr. Berro.

However, since then, the Government's objective have been met. Every one of defendants has in fact plead guilty. Nothing has happened from the time the Government reviewed the facts that led to the charges being brought against Houda Berro till today to change the reasons.

Now, the Government is standing before this Court, as set forth in their memorandum, asking the Court to in fact go along with the guidelines, which were 12 to 18 months in fact incarcerating Miss Berro.

THE COURT: Mr. Samaan, as you probably know, it would be a rare week that goes by this Court and other judges of this Court aren't confronted by situations where defendants appearing before them have been offered something better than what they're going to get. That's the plea bargaining process. And the Court -- there has been a court or two in the country have spoken up about that, as maybe not the nearest thing to free will, but in any event it is legal and

it is part of the law enforcement process, and I'm not going to draw any conclusions negative to the Government based on that.

MR. SAMAAN: Your Honor, that was not my intent, that the Court would draw negative conclusions. However, what we're saying is that the Government at that time didn't believe that Houda Berro was this big of a criminal or has done something so wrong that would require her to go to jail. And now, same facts, same situation, they're argue in the memorandum that she should in fact go to jail.

And one of the issues that they raise in their memorandum that I need to speak on, Judge, is these allegations of marriage fraud. This issue was taken up by the Court in a motion that was brought sometime back, and at that time the Court, even though it did not rule on it, said that it believes that it's not going to allow that to come in, however, at the time of trial, we can revisit the issue with respect to allegations of marriage fraud.

Your Honor, there's nothing that would show that Miss Berro was ever involved in marriage fraud. She did get married to Robert Berro? Yes. Did she file a petition to adjust the immigration status? Yes. Did she divorce him? Yes. There's nothing

illegal about what she did. No charges have ever been brought against Miss Berro alleging that she's involved in marriage fraud.

The Government says that based on --

THE COURT: We're here today on bank fraud charges, not marriage fraud charges, which the motion was before the Court I believe with regard to suppressing something at trial if the matter went to trial. It didn't go to trial.

MR. SAMAAN: No, that's correct.

THE COURT: And we're talking about bank fraud here.

MR. SAMAAN: That's correct. Thank you, your Honor. Your Honor, by way of background, Houda Berro is a 28 year old lady, mother of two children -- a single mother of two children. She has worked hard all her life trying to support those children. She has held odd jobs. She's baby sat at the house. She's also did some sewing for people at her house. She's worked at gas stations. Presently, she's working at a pharmacy. All this to make sure she takes care of those two children that she has at home. She's the sole caretaker of these children.

The record would reflect that she has never broken the law prior to this incident. Miss Berro, at

the time the charges were filed, was in Lebanon. She came back to this country to stand before this Court and answer those charges against her. Now, she didn't have to come back. There's no extradition from Lebanon. She was there, and as the Government states, she has family there. She could have fled. If she wanted to flee, she wouldn't have come back to begin with. She came back. She wanted to stand before this Court and answer the charges.

Did she make a mistake? Absolutely. And she will tell that to the Court, and she did tell it to the Court at the time she entered her plea. She lied on her application for mortgage when she was trying to purchase a home for her kids. She allowed Halim Berro to make payments on that mortgage, again, with the understanding believing that he's doing it to help secure a home for the children.

When the mortgage was paid off, she filed for a new mortgage, refinanced, again, at the behest of Abdul Halim, with the understanding that he's going to use that money to open up a business, again, to help these children.

Judge, it's worthy to note that the $124,000 mortgage refinance that was taken out by Houda Berro, has been paid in full as we stand before this Court

today, with the last payment I believe of 1,000 and something being paid, what, in the last month. She has paid every penny she's took out.

She did not gain anything from the actions or from lying on her application. She took responsibility for it. She did not file bankruptcy. She didn't walk away from it. She didn't run from it. She stood before this Court and answered to it and accepted her responsibility and paid every penny back.

All she ever wanted to do was to make sure that her children's lives and future was secure. As the letters that we set forth attached to our memorandum, Judge, clearly reflect the type of person that Houda is, a caring person, a loving person, a woman that her whole life revolves around her children. She also helps other people. The one lady that wrote on her behalf said that she was like a mother, a sister that she didn't have her. She spent all night with her one night at the hospital when she had her first baby. It was Houda that helped her get through those moments and helped to show her how to care for that baby.

You heard from the father, who he teaches religion at a mosque, and he says he raised his children to be good citizens, to abide by the law, to

live within the boundaries of the law, and Houda has, with the exception of this, done that. And she will tell you at the time, she didn't really believe she was doing something wrong, although she does know now when she lied on her application.

But to her benefit, she did stand behind it and she paid back every penny she took out. She did not gain anything. And as a fact, your Honor, she has also as part of the agreement agreed to forfeit the home that her children live in.

Your Honor, I believe, and we've set forth many reasons in our petition, that a sentence of probation on behalf of Miss Berro would be a just and proper sentence. To take her away from her children would be devastating, not just for her, but for the kids. She has learned from her mistake. The mere thought of being taken away from the kids, a thought that she has lived with from the day she was charged until today, has caused her more stress and anxiety. And I believe that in and of itself is sufficient deterrence for her, who but for this, has led a very law abiding life, that a sentence of incarceration is not going to do anymore than she has already suffered. Thank you, your Honor.

THE COURT: Thank you, Mr. Samaan. And

Miss Berro, you too may address the Court. If you choose to do so, now is the time.

THE DEFENDANT: Yes, your Honor. I just want to say I know that what did I was a mistake, but that was a fact of ignorance of the law. And I'm very sorry about that. I learned a big lesson from this, a very big lesson. I been -- I been under stress, on medication. I was under tether almost a year. It was very hard for me and painful to go through all this and I'm very sorry. I know I did a mistake, but I learned a very big lesson for it, and I learned to ask what's right and what's wrong, what's with the law and what's against the law. And I just want to ask you for one thing, with all my heart, for you -- I'm sorry, for your forgiveness.

THE COURT: Take your time.

THE DEFENDANT: I'm shaking, I'm sorry. For mercy because of my kids. They're everything to me. They're my life. They don't have anyone except me. Please don't take me away from them. Don't break their heart, please. And God bless you and your family, and thank you for listening.

THE COURT: Thank you, Miss Berro. For the Government, Miss McQuade.

MS. McQUADE: Yes, your Honor. I won't

belabor the issues we covered in the Government's sentencing memorandum. Has Court had an opportunity to read that memorandum?

THE COURT: Yes, I have.

MS. McQUADE: I just want to highlight a couple of points then that are made in the memorandum. First, your Honor, in calculating the sentencing guidelines range of 12 to 18 months, only the fraud from the two mortgage frauds that Ms. Berro was directly involved in, those two mortgage frauds on the Orchard property, were used to calculate the fraud amount.

And then from that fraud amount, Ms. Berro was given a four level reduction in her offense level for her role in the offense, because of the relative culpability between her and Abdul Halim Berro. So based on those factors, it's the Government's position that a guideline range of 12 to 18 months is a reasonable sentence, in light of all of the other factors under 3553(a).

THE COURT: Thank you, Miss McQuade. The Court finds that the facts set out in the presentence report and used in the calculation of the offense level and the criminal history category are accurate, and that the calculation itself of the sentencing

guideline range is accurate. It does produce -- calculation produces an offense level of 13 and a criminal history category of I.

And Miss Berro, I've reviewed your file, the presentence report, the Rule 11 Plea Agreement, and I have considered all of this and what you have said so persuasively, as well what Mr. Samaan said so persuasively in light of Title 18 U.S. Code 3553(a). I've also considered the fact that we have a large number of defendants, and one of the things that 3553(a) tells me to consider is proportionality, or the problem of disparity, if there is disparity, when there is substantial number of people involved in the same criminal activity.

And believe me when I say that I believe you when you talk about your concern for your children, and I wish that the powers given to me were such that I could arrange to give you a sentence of incarceration and still let you care for your children, but I can't do that.

And pursuant to the Sentencing Reform Act of 1984, and considering 18 U.S.C. 3553(a), I place the Defendant Houda Mohamad Berro in the custody of the Bureau of Prisons for 12 months and one day.

The Court finds the Defendant does not have

the ability to pay a fine, therefore all fines and costs of incarceration and supervision are waived. It's further ordered the Defendant shall pay the United States the usual assessment required by statute of $100, and that's due immediately.

Mandatory drug testing is waived. Upon release you'll be on supervised release for a term of three years, and while on supervised release you'll abide by the standard and special conditions adopted by this district court. And due to the history of suffering from depression, the following condition is imposed:

If necessary, Defendant shall participate in a mental health program as approved by the probation department.

And let me, I think I know the answer, but I ask Miss McQuade, if in the Rule 11 the Defendant has waived appeal rights?

MS. McQUADE: She has, your Honor.

THE COURT: Well, you probably don't have any appeal rights because they've been waived, but there's something that you or a lawyer for you discovers and believes warrants an appeal and you can't afford a lawyer, I'll appoint one for you and give that person whatever part of the record he or she

needs in order to file and perfect an appeal. Any claim of appeal must be filed within ten days of today, with very few exceptions.

Miss Berro, has been free on bond. Voluntary surrender?

MS. McQUADE: Yes, your Honor. No objection to that.

THE COURT: So ordered. Anything further the Government would like the record to reflect?

MS. McQUADE: Yes, your Honor. There is the matter of forfeiture, which is part of the Rule 11 Plea Agreement to forfeit the Orchard property. And Miss Beck would like to speak to that issue.

MS. BECK: Your Honor, on August 9th 2006, I filed with the Court an application for entry of preliminary order of forfeiture. I would ask that that order be entered at this time. I would also note that there is a related civil case in which the real property is the defendant, and I have presented Mr. Samaan and Miss Berro with a stipulated consent judgment and final order of forfeiture, and we would ask that that order be entered. We will tender that to the Court and ask that this be entered as well to resolve the civil case.

And I would also ask then that the

forfeiture be made part of the judgment and commitment order, either by attaching the preliminary order, or I'd be happy to provide language from the order to the case manager for inclusion in the J and C.

THE COURT: The preliminary order of forfeiture, assuming I sign it and I'd like to look through it briefly if I do, will by this order, by this reference, become part of the judgment order.

MS. BECK: Thank you, your Honor.

THE COURT: Anything further, Miss Beck?

MS. BECK: No. Thank you.

THE COURT: Miss McQuade?

MS. McQUADE: No, your Honor. Thank you.

THE COURT: Mr. Samaan, do you have anything further?

MR. SAMAAN: Not myself, your Honor. Although my ear is being burned by my client, if the Court would like to give her a little time to speak.

THE COURT: I don't know what she wants to say.

THE DEFENDANT: Please, your Honor, please. The house is going. The father is going, and you're going to take their mother, too. It's going to break their heart. It's Christmas. I was planning -- I was hoping for your mercy, for your forgiveness. I did

something wrong but I paid the price.

THE COURT: I know.

THE DEFENDANT: Don't take me away today.

THE COURT: I know --

THE DEFENDANT: They're five years old.

THE COURT: I know --

THE DEFENDANT: How can you take me away 12 month from them?

THE COURT: I'm talking now, please. I know and I am sympathetic, maybe more than I'm supposed to be. I wish I knew how to solve this problem, but I don't, and I've got to do my job. I hope you take care of yourself.

THE DEFENDANT: How can I take care of my --

THE COURT: Stay away from depression if you can, and get help --

THE DEFENDANT: This is going to kill my kids.

THE COURT: -- if you have depression --

THE DEFENDANT: It's going to break their heart.

THE COURT: -- and I hope that you stay healthy in other ways. Stay in touch with your family. Good luck to you.

MR. SAMAAN: Thank you, your Honor.

MS. McQUADE: Thank you, your Honor.

(Proceedings concluded 11:13 a.m.)

- - -

**C E R T I F I C A T I O N**

I, Andrea E. Wabeke, official court reporter for the United States District Court, Eastern District of Michigan, Southern Division, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript has been prepared by me or under my direction.

March 26 2007

Andrea E. Wabeke Date
Official Court Reporter
RMR, CRR, CSR

- - -